ARNOLD *et al.* v. CITY OF STARKVILLE *et al.*

[95 South. 523. No. 23107.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Separate municipal school district territory, owned by state as campus of Agricultural and Mechanical College, may be added to municipality.*

Under section 7361, Hemingway's Code (section 4533, Code of 1906) providing that: "Any part of a county or counties adjoining a municipality which is a separate school district may be added to such district by the county school board upon petition of a majority of the qualified electors of the territory proposed to be added, provided such petition shall have been approved by the trustees of the separate district," the county school board upon such petition may add to the municipal separate school district territory owned by the state, and constituting the campus, college, and grounds of the Agricultural and Mechanical College, and there is nothing in Laws 1878, chapter 19, creating such college and providing for its operations, that prevents such action.

2. SCHOOL AND SCHOOL DISTR'CTS. *Law providing that public school may be located at chartered institution does not prevent including territory in municipal school district.*

Laws 1900, chapter 117 (Hemingway's Code, section 7333; Code 1906, section 4513), providing that a public school may be located at a chartered institution with the consent of the trustees thereof, is permissive and not exclusive, and does not prevent the territory occupied by such institution being included in a municipal separate school district, when it may be proper so to do in the judgment of the authorities named in section 7361, Hemingway's Code (section 4533, Code 1906).

3. SCHOOLS AND SCHOOL DISTRICTS. *Not diversion of municipal separate school district funds to include therein nontaxable state land; not required that property added to municipal school district bear added expense incurred; policy of state to educate children, regardless of proper worth of parents.*

It is not a diversion of the funds of a municipal separate school district to include in said separate school district territory belonging to the state which is nontaxable, for the purpose of affording educational facilities to children of educable age residing upon such property. It is not required that property added to a municipal district shall pay taxes sufficient to bear the added expense incurred in educating them. It is the policy of the state to educate its children, even though their parents have no property to pay the expense thereof.

Appeal from chancery court of Oktibbeha county.
HON. A. J. McINTIRE, Chancellor.
Suit by J. M. Arnold and others against the city of Stark-

ville and others, to restrain the addition of a separate school district to defendant city of Starkville. From a judgment for defendants, plaintiffs appeal. Affirmed.

*Leftwich & Tubb,* for appellants.

It need not be argued, we submit, that the taxpayers may bring a suit to enjoin ministerial and fiscal officers of a county or municipality from an abuse of discretion or from exceeding their powers: *Wilson* v. *Wallace,* 64 Miss. 13; *Monroe County* v. *Strong,* 78 Miss. 565; *Whittaker* v. *Salem,* Ann. Cases, 1915B, 794, and note; *Greer* v. *Austin,* 51 L. R. A. (N. S.) 336; *Pearce* v. *Hogans,* 36 L. R. A. (N. S.) 1; *Morton* v. *Trustees,* 8 S. & M. 773.

### MISSISSIPPI SYSTEM OF FREE PUBLIC SCHOOLS.

III.   By sections 201, etc., to the Constitution of the state, it is ordained that a system of free public schools shall be established by taxation or otherwise. By section 212 of the Constitution, taxation shall be uniform and equal throughout the state and it has been held by the courts that equality of taxation imposed by the Constitution applies to the municipalities of the state. *Adams* v. *Bank,* 75 Miss. 701; *Bank* v. *Oxford,* 78 Miss. 582.

By section 100 of the Constitution, the power of boards of supervisors, or of municipalities, to relieve from or remit liability for unpaid taxes or otherwise to make gratuitous gifts is especially prohibited. *Morris Ice* v. *Adams,* 75 Miss. 410; *Jackson Ry. etc. Co.* v. *Adams,* 79 Miss. 408. The legislature has provided for the organization of municipalities into separate school districts and by section 7363, Hemingway's Code, provision is made for extending the separate school district beyond the boundaries of the municipality; but the statute provides that taxable property of the added territory to such municipalities shall be assessed and taxes collected therefrom for all school purposes.

It appearing to the legislature under the Laws of 1900, that in this scheme of education that the children of the teachers and employees of chartered institutions were left out of the scheme of education, it was provided that the county school board with the consent of the trustees of the chartered institution might locate a public school at the site thereof but that it should be conducted in accordance with the recommendations and regulations of the chartered institution and that the local trustees and the trustees of the chartered institution should in joint session elect the teachers for the public schools.

In enforcing section 112 of the Constitution, and like sections, this court has always held that individuals and corporations claiming exemption from taxation must establish their right beyond all question and this rule, so far as we know, prevails in all cases of exemption from the burdens of taxation. *Adams* v. *Y. & M. V. R. R. Co.,* 77 Miss. 194; *Greenville Ice Co.* v. *Greenville,* 69 Miss. 86; *Y. & M. V. R. R. Co.* v. *Thomas,* 65 Miss. 553.

So jealous has the legislature been of the taxing power that by section 3714, Hemingway's Code, boards of supervisors are required to point out the statute authorizing the allowance of any claim, and by sections 3716 and 3719, the members of the board are made personally liable for allowances greater than or not authorized by law. These fundamental laws of taxation throw light on the present controversy. Our statutes in every word and syllable recognize the deep seated disposition on the part of administrative officers of different departments of the government to bestow gratuities and make gifts at the expense of the taxpayer. When these ministerial officers abuse the discretion vested in them and undertake to give away the taxpayers' funds and make gifts without corresponding compensation, the taxpayer has always had the right to resort to injunctive relief in cases of abuse of discretion, and in case of an attempt to do illegal and

unauthorized acts.   Pum. Eq. Jur. sections 259, 260, and 265.

IV.   When this court examines the plat, Exhibit "A" to the bill, admitted by the demurrer to speak the truth, it will be impressed with the inescapable conclusion that the city of Starkville in the administration of its separate school district was not in need of added territory for in all the populous district surrounding the city of Starkville, no portion of it has ever clamored to enter the separate school district except the college campus in the added territory in question, whose electors could easily, of course, procure the county school board to set them free from county taxation because the county school board had all to gain and nothing to lose.

Under and by force of section 3373, Hemingway's Code, the legislature had fixed the burden of educating the children of the professors and servants of the A. & M. College and other state institutions upon the common school funds of the state and the county.   By one stroke the county school board were ridding themselves of this burden and were losing but a few dollars from the common county fund because the said property worth millions of dollars was not taxable.

In going through this empty form of law the whole scheme becomes plain.   If the court will read the last paragraph of the petition of the board of trustees of the city of Starkville, Exhibit "C" to the bill, reciting in the first paragraph that the board joined the petition of D. C. Hull and others, for the addition of the territory to the Starkville separate school district and added this suggestive language in the last paragraph: "In this way we can handle the situation of furnishing facilities for the children in said territory and avoid a great deal of inconvenience and misunderstanding which has arisen in the past."

The demure recital of the board of trustees of the separate school district of Starkville, of their great desire of "furnishing facilities" for the children of the added ter-

ritory goes to the very heart of this controversy. It shows hearty co-operation between the county school board and the board of trustees of the city of Starkville, to burden the taxpayers of the city of Starkville, with the gratuities of educating the one hundred and more children of school age, of professors and employees on the college campus free of charge, and of relieving them of paying the small tuition required theretofore by the board of trustees and still required of all others except the citizens of the campus.

In characterizing this conduct of these administrative officers as an attempt to force a gratuity on the taxpayers we will be met, of course, with the answer that in the district is included a small amount of privately owned lands and it will also be argued, no doubt, that the professors are necessarily possessed of household goods which will be to a certain degree taxed and, therefore, that it is not an absolute donation but the court will remember that the revenue produced by taxing household goods after the exemptions are taken out in Mississippi, is hardly to be considered and it is charged in the bill that the revenue produced by the small amount of private property in the added territory is negligible. Of course, the millions of state-owned property on the campus is not taxable at all. So, we are within the record strictly when we state it as a substantial fact that the adding of this territory was a gratuity to the citizens of the campus, no doubt made to meet their clamors and protestations against paying the tuitions charged theretofore by the trustee for their children entering the Starkville schools and which are still charged by reason of this discriminating ordinance against all of the other children in the surrounding territory.

### THE DIVERSION OF PUBLIC FUNDS.

V.   Public funds cannot be diverted from their legitimate channels and the uniformity provision of section 112

of the Constitution in imposing taxes upon the people applies just as forcibly to their disbursement.   Preference and discriminations and gratuities can no more be exercised in the disbursement of public funds than they can be exercised in assembling them.  *Dickinson* v. *Edmonson,* Ann. Cases, 1917C, 913, & note; *Whittaker* v. *City of Salem,* Ann. Cases, 1915B, 794, & note; *Morton* v. *Grenada,* 8 S. & M: 773; *Otkin* v. *Lampkin,* 56 Miss. 758.

If the court will peruse the recent case of *Dickinson* v. *Edmondson, supra,* and the lengthy note appended thereto, it will note how administrative officers have run the gamut of thousands of devices to use the public funds for private ends and divert them from the purpose for which they are intended.   In culling from the language of the courts, on page 918 of the note to *Dickinson* v. *Edmunson,* one of the cases referred to above, this pointed language is used by the annotator: "Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the country.   They have turned a deaf ear to every enticement and frowned upon every attempt, however subtle, to evade the constitution.   Promised benefit, and greater gain have been alike urged as reasons, but without avail.   They have endeavored to say in unmistakable terms that the common-school fund is just what it purports to be, a fund to be used for the sole purpose of supporting the graded schools of the commonwealth under the sanction of fixed and uniform laws.   It follows that all experiments in education must be indulged, if at all, at the expense of the general fund.

"Under the various constitutional provisions protecting the common school fund it is uniformly held that the legislature cannot divert the school fund to any other than school purposes.  *State* v. *Fitzpatrick,* 5 Idaho, 499, 51 Pac. 112; *Morton* v. *Grenada Male, etc., Academies,* 8 Smedes & M. (Miss.) 773, and see the reported case."

The efforts of administrative officers to divert funds to private schools as the note shows on page 922, of which

*Otkin* v. *Lamkin,* from our own court, is an example; of diverting them to sectarian schools as set out on page 923 and of educating the children in orphan asylums as indicated on 924, all indicating the ever-present disposition of administrative officers to use the public-school funds contrary to the meaning and purpose of the Constitution.

Private charities have endowed orphan asylums on the boundary of the city of Jackson, but it would be a palpable violation of the law for the school board of the city to crook the lines of the separate school districts, if these institutions are not within the city limits and add the education of these orphans to the burdens of the taxpayers of the city of Jackson and to shift the burdens from the chari-table organizations that have established these orphanages. Efforts of this sort have been everywhere condemned so far as we have been able to ascertain,  See note above, p. 924.

The children of a charitable institution like an orphan-age, or living on a military organization, as are found on the environs of many cities who pay no taxes are not entitled to the privileges of the public schools. *Town Belle Point,* v. *Pence,* 17 S. W. 197; *Commonwealth* v. *School Directors,* 26 L. R. A. 581, & note; *Commonwealth* v. *Balmer,* 26 L. R. A. 594, & note; *Lakefarm* v. *The District Board,* 51 L. R. A. (N. S.) 234.

### RECIPROCITY IN ADDING TERRITORY TO A SEPARATE SCHOOL DISTRICT.

VI.  It will no doubt be urged before this court as it was before the chancellor, that there was a small amount of taxable property added and the supposition must be entertained that the professors, teachers, employees and agents had some chattels to be taxed, but the act of the legislature, section 7663, Hemingway's Code, in permitting territory to be added to a separate school district, did so not as a charity to inhabitants of the added territory, nor as a burden to the separate school district, for

it distinctly provided that the taxable property in such
added territory shall participate in all the expenses of ad-
ministering the schools.  This court, of course, will not
shut its eyes to the fact that the foundation of taxation
in Mississippi is real estate.  The revenue raised from
household goods is well-nigh negligible.  The millions of
dollars paid for education come from landed properties.
The boundaries of the district of added territory are land-
ed boundaries, and the taxable property contemplated is
landed property, necessarily, such as buildings, railroads,
factories; here, of course, are millions of dollars of landed
property in the huge establishment of the A. & M. College,
but there is no taxable property.  It is perfectly plain that
the A. & M. College will continue, as it has for years, to
rapidly grow as all schools of like character have all over
the south and west, until it contains thousands of students
instead of hundreds and the public school population on
the campus will just as rapidly increase and, yet, while
the burden will tremendously increase on the city, all as
set out in the bill, both for the cost of education and. the
erection of buildings, yet its new addition will bring no
increase in the revenue.

VII.   If the court will read the original charter of the
A. & M. College, in the Acts of 1878, it will observe that
an independent separate municipality is established, gov-
erned by a board of trustees, appointed by the Governor,
in which the ruling authority is said trustees, together
with the faculty of the institution.  The only authority
for the government of this establishment is the state leg-
islature and its board of trustees.  We submit that the
city of Starkville can't invade this territory by attempting
to include it in the separate school district under the
dominion of the trustees of the city schools and the board
of mayor and aldermen.  How can the state's dominion
and authority over this educational institution, establish-
ed by the legislature, be invaded by the municipal au-

thorities of the exclusive dominion of the legislature over the institution is emphasized by the enactment of section 7333 of Hemingway's Code, setting up a public school for the children of public school age and not qualified to enter the college on the campus of the institution.   We submit that this administrative body is entirely without authority to invade the state's public domain for the purpose of educating its children in the public schools.

*W. W. Magruder, M. A. Saunders* and *B. M. Walker,* Jr., for appellees.

First:   It is admitted that taxpayers may bring a suit to enjoin ministerial and fiscal officers of a county or municipality from abuse of discretion or from exceeding their authority.   Second: That the constitution of the state of Mississippi provides for the establishment of a system of free public schools by taxation or otherwise.   That the constitution of the state of Mississippi, section 212, also provides that taxation shall be uniform and equal throughout the state.   That this provision applies to municipalities of the state. It is also admitted that boards of supervisors or board of aldermen of municipalities have no authority to relieve or remit liabilities for unpaid taxes or otherwise to make gratuitous gifts as contended in appellants' brief.   But it is not admitted that the provisions of the Constitution referred to and cases cited thereunder have any connection with the case here in question.   The legislature has provided for the organization of municipalities into separate school districts and by section 7361 of Hemingway's Annotated Mississippi Code of 1917; provision is made for extending the separate school districts beyond the boundaries of the municipality.   Nothing is there stated as to the kind or character of property that may be included in such extension.   No question is raised in this case of exempting individuals or corporations from taxation.   No individual or corporation involved in this case

has claimed any right to such exemption and we submit that section 112 of the Constitution with the cases cited thereunder is therefore not in point. So also with sections 3714, 3715, and 3719 of Hemingway's Annotated Mississippi Code of 1917, cited under the statement that members of boards of supervisors are personally liable for allowances greater than or not authorized by law. No allowances have been made in this case. As heretofore stated, section 7363 of the Hemingway's Annotated Mississippi Code, makes provision for the extension of separate school districts beyond the boundaries of the municipality. The proceedings for this extension were in all things legal, in fact at the time the injunction was filed, the extension had been completed. The school board had passed and adopted the order for said extension and the subsequent order of the mayor and board of aldermen was a mere formality not called for under section 7363 of the Hemingway Code.

Third: The case of *Commonwealth* v. *School Directors,* 26 L. R. A. 581, and note, stands for the proposition that children from other districts who become inmates of the Childrens Industrial Association of Harrisburg, Pennsylvania, a charitable institution, have no right to free admission to the public schools of Upper Swatara Township. The question was as to the place of residence of these children and the court held that in determining whether the child had a residence in Upper Swatara Township which entitles him to common-school privileges, regard must be had to the occasion and purpose of his presence there. The court stated that he was an inmate of an institution owned and managed by an association chartered for the purpose of supporting, caring for, and educating poor and needy children. Independent of his presence in this institution for the purpose of maintenance and education therein, there is nothing on which to base the claim that he is a resident of the district for whom it is the duty of the directors to provide common-school

facilities. The court further stated that he was not a resident of the district nor a member of any family in it. The case cited is not in point here, for reason that the children to be educated in the schools of the Starkville separate school district are children of families residing in the territory added to the Starkville separate school district and as children of such families are residents of said added territory and entitled to school privileges in the Starkville separate school district. To the same effect is the case of *Commonwealth* v. *Balmer,* 26 L. R. A. 584 and note.

So also with the case *Lake Farm* v. *District Board,* 51 L. R. A. (N. S.) 234. The court in that case stated: "The child had a mother residing in another part of the state. We do not decide in this case that if these boys become *bona-fide* members of a family who reside in the school district and who were in the position of *loco parentis* to them, that would not give them a residence so as to entitle them to school privileges. What we do decide is that non-residents of a district do not acquire a residence therein for school purposes by becoming an inmate of an institution whose purpose as expressed in its purposes, is for the support and education of children.

We have not access to the case cited in appellants' brief, *Belle Point* v. *Pence,* 17 S. W. 197, but from appellants' brief this was a case where children outside the school district were attempting to secure education in the district without adequate tuition. This case again is not in point for the reason that no attempt here is being made to educate children outside the Starkville separate school district as extended.

Fourth: It is contended that the extension of the Starkville separate school district to include the added territory described in the bill constitutes an unlawful exercise of the administrative duties of the said boards and constitutes a diversion of the school funds to be raised by the city of Starkville, for the support of the schools thereof,

to an unlawful purpose. That the revenue to be raised from the proposed added territory was practically negligible and that the addition of such territory placed a great burden on the taxpayers of the city without any corresponding benefit. In the case of *Forbes* v. *Meridian,* 86 Miss. 243, the court held that the power of extending corporate limits is granted, not to be resorted to for the purpose alone of increasing the income of the municipality, but in order that the benefits incidental to city government may be extended to those residents in the territory adjacent to the municipality and included in the extension. That the question of the return of revenue which the city may receive from the territory embraced in the extension is no criterion, by which to judge the reasonableness of the ordinance. Municipalities are not devised for the purpose solely nor chiefly for the purpose of raising revenue.

In the case of *Hunter* v. *Pittsburg,* 52 U. S. (L. Ed.) 151, the court held that municipal corporations are political sub-divisions of the state, created as convenient agencies for exercising such governmental powers of the state as may be entrusted to them. For the purpose of executing these powers properly and efficiently, they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers, conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither charters nor any law conferring governmental powers or vesting in them property to be used for governmental purposes or authorizing them to hold or manage such property or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the Federal Constitution. The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and de-

stroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme and its legislative body, conforming its action to the state Constitution, may do as it will unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes, suffer inconvenience, and their property may be lessened in value by the burden of taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it.

Quoting from 19 R. C. L., pages 732 and 733, under the head "municipal corporation," it is there stated: "There is no contract between the citizens and taxpayers of a municipal corporation itself that the citizens and taxpayers shall be taxed only for the uses of that corporation, and shall not be taxed for the uses of any like corporation with which it may be consolidated. It is held by the great weight of authority that the courts cannot interfere with the annexation of territory to a municipal corporation even if the effect is to subject the annexed territory to taxation for municipal purposes from which it derives no benefit. A statute providing for the annexation of territory to an existing municipality is not objectionable because it may result in the taxation of property within the annexed territory to pay a pre-existing indebtedness of the municipality to which it has been added.

It is contended that the extension would include a municipality or *quasi*-municipal corporation, owned by the state and governed absolutely by its board of trustees, appointed by the governor and governed only by the state

legislature. In the case of *Day* v. *Salem,* 65 Ore. 114, cited in Ann. Cases, 1915A, 1011, it is held that under a municipal charter authorizing the extension of the boundaries of a city, the city may by ordinance duly extend its boundaries so as to include state property. The state property in this case being the Oregon State Insane Asylum and other state property. The contention in that case was that the employes of the Asylum were not entitled to vote in an election proposing the extension. The court held that the fact of employment in the Asylum did not disqualify such employees to vote. It was also contended that the territory owned by the state could not be legally annexed to a municipality for the reason that the sovereign is not bound by the provisions of a general statute unless expressly named therein or included by necessary implication and that therefore, the charter authorizing the extension of the boundaries of the city or the acts and ordinances of the city attempting to include state property within its bounds could not be deemed to authorize the addition of the city boundaries to include state territory. The court held that the exemption of the sovereign from the application of the statutes did not cover this kind of a case; that state and county property are often within municipal boundaries but the municipality can exercise no control over it that will interfere with the sovereign authority; that there is no merit in the contention that the city boundaries cannot be extended over territory belonging to the state.

Fifth: It is contended that chapter 117 of the Laws of 1900, covers the situation with which the children residing upon the campus of the Mississippi Agricultural and Mechanical College are confronted. This chapter provides that the board can locate the public school on the grounds of a chartered institution of learning in districts containing not more than one such institution if it be so desired by the authorities of the chartered institution with the consent of the trustees of said institution. This

chapter does in a way offer a solution to the parents of these children of the problem of their education. While this route might have been taken this is not an exclusive route and the school board has seen fit to adopt another remedy for the situation. There is nothing in chapter 117 of the Laws of 1900, to show that it was intended to be the exclusive remedy for such situation and we do not believe that such was the intention of the legislature in passing this act. This statute is contingent in its character and application. It is clearly intended to take effect only in events which do not exist in the instant case. It has no application whatever except upon the concrete desire manifested by definite legal action of the college authorities and of the local board of trustees for the county schools. This statute has no application whatever until the college authorities take action that come under it which action must be approved by the board of trustees of such college. The appellant's bill in this case does not show that the college authorities desire to operate a public school under this statute. The bill does not show that the board of trustees for the college or for our higher educational institutions have ever taken any action to come under such statute. The bill does not show that the county board of education or any other legal authority has ever expressed any desire to come under this statute or has ever taken any legal action for such purposes. It is therefore entirely manifest that this contingent statute has nothing whatever to do with the case presented to the court at this time.

The gravamen of appellants' bill is to deny the children residing on the campus of the Mississippi Agricultural and Mechanical College of a public school education. The contention is that this territory cannot be added to the Starkville public school district for the reason that a considerable portion of it is state property and not subject to taxation. The same is true in so far as their rights to education in the county schools are concerned. If they

are denied the right to be added to the Starkville public school district, they should also be denied the right to attend the county school for the same reason. And so also be denied the right to come into a consolidated school district.

We submit that the court below committed no error in sustaining the demurrer to the bill.

ETHRIDGE, J., delivered the opinion of the court.

In April, 1922, certain citizens residing on certain property contiguous to the city of Starkville, and being the territory comprising, among other property, the Agricultural and Mechanical College of this state, addressed a petition to the county school board of Oktibbeha county, wherein they recite, setting forth that they were a majority of the qualified electors residing in said territory, describing the said territory, and asked that said territory be added to the separate school district of the city of Starkville, in accordance with chapter 186, Laws of 1916 (Hemingway's Code, sections 7361, 7362, 7363, 7364, and 7365). The board of trustees of the separate school district of the city of Starkville, by vote properly taken, joined in the petition for the addition of the said territory, and requested the county school board to allow said petition, winding up with this statement:

"In this way we can handle the situation of furnishing facilities for the children in said territory and avoid a great deal of inconvenience and misunderstanding which has arisen in the past."

The county school board approved the petition authorizing the said territory to be so added to the separate school district of the city of Starkville, whereupon Arnold and others as taxpayers of such school district filed a bill for injunction, to enjoin and restrain the addition being placed in the separate school district of the city of Starkville, mainly upon the ground that the property, or the

great bulk thereof, situated in the added territory, was state property, and nontaxable, and that the result would be to impose a burden upon the taxpayers of the separate school district for the benefit of children living upon the state property, and that so to do would be in effect a diversion of school funds, and that there would be no adequate consideration returning to the separate school district for granting of school privileges to these children, the small amount of revenue which would be derived from the added territory being so small as to be negligible when compared with the expense to the separate school district in furnishing education. It was also contended that the city was without power to include this territory, or that part of it which constitutes the property of the Agricultural and Mechanical College, because the act creating the college, chapter 19, Laws of 1878, in effect make the trustees a municipality or state agency, and the city would have no power to extend its separate school district over said territory, for the reason that it would conflict with the act of legislature.

The statutes of the state, dealing with the subject-matter under consideration, are section 7361, Hemingway's Code, section 4533, Code of 1906, as amended by Laws of 1916, chapter 186, and the two sections following. It will be noted from section 7361, Hemingway's Code, which reads as follows:

"Any part of a county or counties adjoining a municipality which is a separate school district may be added to such district by the county school board upon petition of a majority of the qualified electors of the territory proposed to be added, provided such petition shall have been approved by the trustees of the separate district," that the scheme is for the qualified electors in the territory proposed to be added to petition the county school board therefor, and to have the petition approved by the trustees of the separate school district. This statute has no other conditions and will apply to all cases unless some other statute

.expressly or by necessary implication covers the subject-matter and makes an exception necessary.

Chapter 19, Laws of 1878, provides for the organization and conduct of the Agricultural and Mechanical College and conferred upon the trustees of that institution the power to make rules and regulations for the successful operation of the college. It does not make that body a municipal corporation, but creates an educational corporation for educational purposes and not for general governmental purposes. This has such powers as is necessary for the accomplishment of the trust reposed in it—"and shall make such laws, rules and regulations for the government of said officers as they may deem advisable. They shall regulate the course of study, rates of tuition, the management of the experimental farm, the manner of performing labor, and the kind of labor to be performed by the student, together with the course of discipline necessary to enforce the faithful discharge of the duties of all officers, professors and students."

The establishment of the college does not exclude the educational authorities from providing proper elementary education for the children residing upon the campus. It leaves the school authorities and the legislature free to deal with that subject. In other words there is nothing to prevent a municipality from extending its separate school district over this territory, so long as they do not interfere with the proper work of the college. As it is necessary to have some means of educating the children of the officers and professors of the college living upon the campus, or near thereto, the legislature had recognized the propriety of so doing as provided in section 7333, Hemingway's Code (Laws of 1900, chapter 117). Code of 1906, section 4513 provides that such school may be established at any chartered institution of learning. It is contended by the appellant that this is the exclusive method of dealing with the institutions, that under this section the burden properly falls upon the county and not upon the separate school

district. As we view this section, it is permissive but not exclusive. There is no reason that would prevent the city from taking this territory into a separate school district. It is nothing unusual for said institutions to be located within the corporate limits or to be brought into them by the extension thereof under proper conditions.

In *Day* v. *Salem*, 65 Or. 114, 131 Pac. 1028, and note Ann. Cas. 1915A, p. 1011, it is held that a municipal charter authorizing the extension of boundaries of a city authorizes the city to extend the boundaries so as to include state property, the property in that case being the State Insane Asylum and other property. Other cases are referred to in the case note above referred to. We therefore think it was competent for the county school board and trustees of the separate school district of Starkville to include this added territory in the separate school district limits.

The other contention pressed by the appellant that it would constitute a diversion of the separate fund of the separate school district by donating to the children out of the separate school district educational facilities at the expense of the property owners is not well taken, for the reason that when this territory is added, the children are residents of the separate school district. The cases relied upon by the appellant are cases involving the question as to whether the children are residents of the school district, and these courts reached the conclusion that they could not be admitted to the public school because they were not residents of the district. That question is free from doubt here, because the children are residents of the district, the parents being qualified electors as shown by the petition. It is not necessary that parents of children should pay taxes in the district in any proportion approximating the value of the educational facilities. The policy of the state is for the state, county, and municipalities as such to educate the children, and the property of all of the property owners are taxed for this purpose, whether they

have children or not. Even the property of corporations is taxed for this purpose, the theory being that the public interest is served by educating the child, regardless of its wealth or social condition. Institutions of the character here involved bring great advantages to the locality in which they are situated. Hundreds of thousands of dollars are spent annually by these institutions, much of which benefit the local community, and the municipalities securing these advantages may well be burdened with some of the expense of educating the children in grammar and high school grades who reside upon or near the campus of such institutions.

The chancellor held in accordance with these views, and the judgment will be affirmed.

*Affirmed.*